**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------

ELAINE WANG,                                          :
                                                      :
                          Plaintiff,                  :     Civil Action No. 1:21-cv-7237
                                                      :
v.                                                    :     **COMPLAINT FOR VIOLATIONS OF**
                                                      :     **SECTIONS 14(a) AND 20(a) OF THE**
RETAIL PROPERTIES OF AMERICA, INC.,                   :     **SECURITIES EXCHANGE ACT OF**
GERALD M. GORSKI, BONNIE S. BUIMI,                    :     **1934**
FRANK A. CATALANO, JR., STEVEN P.                     :
GRIMES, RICHARD P. IMPERIALE,                         :     **JURY TRIAL DEMANDED**
PETER L. LYNCH, and THOMAS J.                         :
SARGEANT,                                             :
                                                      :
                          Defendants.                 :
-------------------------------------------------------  :

        Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

        1.      This is an action brought by Plaintiff against Retail Properties of America, Inc.,

("RPAI or the "Company") and the members RPAI's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed merger between RPAI and Kite Realty Group Trust and its affiliates

("Kite Realty").

        2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on August 23, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby RPAI will merge with and into KRG Oak, LLC, a wholly owned subsidiary of Kite Realty ("Merger Sub"), with Merger Sub surviving as a wholly owned subsidiary of Kite Realty. Immediately following, Merger Sub will merge with and into Kite Realty Group, L.P., the operating partnership of Kite Realty, so that all of the assets of Kite Realty will continue to be owned at or below the Kite Realty Operating Partnership level (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each RPAI stockholder will receive 0.623 Kite Realty shares (the "Merger Consideration").

3.      As discussed below, Defendants have asked RPAI's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi") in support of its fairness opinions.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to RPAI's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.       This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.       Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a portion of the wrongs complained herein occurred in this District. Moreover, the Company's proxy solicitor, Innisfree M&A Incorporated, is headquartered in this District, and the Company's stock trades on the New York Stock Exchange, also headquartered in this District.

## PARTIES

9.       Plaintiff is, and has been at all relevant times, the owner of RPAI stocks and has held such stocks since prior to the wrongs complained of herein.

10.       Individual Defendant Gerald M. Gorski has served as a member of the Board since 2003 and is the Chairman of the Board.

11.       Individual Defendant Bonnie S. Biumi has served as a member of the Board since 2015.

12.     Individual Defendant Frank A. Catalano, Jr. has served as a member of the Board since 2003.

13.     Individual Defendant Steven P. Grimes has served as a member of the Board since 2009 and is the Company's Chief Executive Officer.

14.     Individual Defendant Richard P. Imperiale has served as a member of the Board since 2008.

15.     Individual Defendant Peter L. Lynch has served as a member of the Board since 2014.

16.     Individual Defendant Thomas J. Sargeant has served as a member of the Board since 2013.

17.     Defendant RPAI a Maryland corporation and maintains its principal offices at 2021 Spring Road, Suite 200, Oak Brook, IL 60523.  The Company's stock trades on the New York Stock Exchange under the symbol "RPAI."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

20.     RPAI is a REIT that owns and operates high quality, strategically located open-air shopping centers, including properties with a mixed-use component. As of September 30, 2020, the Company owned 102 retail operating properties in the United States representing 20.0 million square feet. The Company is publicly traded on the New York Stock Exchange under the ticker symbol RPAI.

21.     On July 19, 2021, the Company and Kite Realty jointly announced the Proposed

Transaction:

> INDIANAPOLIS and CHICAGO, July 19, 2021 /PRNewswire/ -
> - Kite Realty Group Trust (NYSE: KRG) and Retail Properties of
> America, Inc. (NYSE: RPAI) today announced that they have
> entered into a definitive merger agreement under which RPAI would
> merge into a subsidiary of KRG, with KRG continuing as the
> surviving public company. The strategic transaction joins together
> two high-quality portfolios with complementary geographic
> footprints creating a top five shopping center REIT by enterprise
> value. The combined company is expected to have an equity market
> capitalization of approximately $4.6 billion and a total enterprise
> value of approximately $7.5 billion upon the closing of the
> transaction assuming a KRG share price of $20.83, which was the
> closing price on July 16, 2021. This immediately accretive
> transaction, paired with a strong balance sheet and significant value
> creation opportunities, is expected to provide a runway to increase
> longterm value for shareholders.
>
> Under the terms of the merger agreement, each RPAI common share
> will be converted into 0.6230 newly issued KRG common shares in
> a 100% stock-for-stock transaction. Based on the closing share price
> for KRG on July 16, 2021, this represents a 13% premium to RPAI's
> closing stock price on July 16, 2021. On a pro forma basis,
> following the closing of the transaction, KRG shareholders are
> expected to own approximately 40% of the combined company's
> equity and RPAI shareholders are expected to own approximately
> 60%. KRG anticipates assuming all RPAI debt and has obtained a
> financing commitment to provide a $1.1 billion term loan bridge
> facility in the event certain debt consents cannot be obtained prior
> to the closing of the transaction. The parties expect the transaction
> to close during the fourth quarter of 2021 subject to customary
> closing conditions, including the approval of both KRG and RPAI
> shareholders. The transaction was unanimously approved by the
> Board of Trustees of KRG and the Board of Directors of RPAI.
>
> The merger will create an operating portfolio of 185 open-air
> shopping centers comprised of approximately 32 million square feet
> of owned gross leasable area. These properties are primarily located
> in "Warmer and Cheaper" metro markets in the United States with
> 70% of centers by annualized base rent ("ABR") having a grocery
> component. The combined company is expected to benefit from
> increased scale and density in strategic markets, deeper tenant
> relationships given the broader mix of open-air retail types, an

appropriately sized development pipeline and a strong balance sheet.

"This merger marks a momentous day for KRG and our shareholders," said John A. Kite, Chairman and CEO of Kite Realty Group. "The combination of our firms brings together two high-quality, complementary portfolios. The combined company will have durable cash flows, operational upside and external value creation opportunities. The financial benefits of the transaction include immediate earnings accretion, while maintaining a strong balance sheet. This merger further demonstrates our conviction in open-air retail centers as essential shopping destinations and last mile fulfillment centers. We are energized about the future of this combined company."

"After many years of curating both of our portfolios, combining them into one company will allow us to generate the best results for both sets of shareholders over the long term," said Steven P. Grimes, CEO of RPAI. "Our increased scale will benefit the business both operationally and financially, allowing us to take advantage of reduced cost of capital as well as pursue future value creation opportunities by partnering KRG's development expertise with our embedded development pipeline. We are excited to present this transaction to our shareholders, who will be the beneficiaries of the near-term and future benefits of the combined company."

**Summary of Strategic Benefits**

The merger of KRG and RPAI is expected to create a number of operational and financial benefits, including:

- **Positive Financial Impacts and Immediate Accretion**
  - Provides immediate accretion to earnings per share upon realizing cash expense synergies of $27 - $29 million
  - Larger scale will reduce cost of capital, thereby driving higher net income to shareholders.
  - Significantly increases shareholder liquidity allowing larger investor base to hold more meaningful positions in the combined entity.
- **Enhances Portfolio Quality and Diversification**
  - Retail ABR per square foot of $19.29.
  - Broader mix of open-air retail types allowing for deeper and more diverse tenant relationships.
  - 70% of ABR is located in centers with a grocery component.
  - Diverse combined tenant base with no single tenant representing more than 2.4% of total ABR.

- **Significant Presence in Strategic Markets**
    - Maintains sector-leading exposure to Warmer and Cheaper markets.
    - Substantial portfolio concentration, with approximately 40% of ABR in growth states of Texas and Florida.
    - Bolsters presence in Dallas, Atlanta, Houston and Austin.
    - Meaningful presence in other strategic gateway markets such as Washington, D.C., New York, and Seattle.
- **Generates Significant Value Creation Opportunities**
    - Presents near-term, organic growth opportunities through lease-up of vacancies caused by the pandemic.
    - Active development and redevelopment projects expected to deliver additional Net Operating Income.
    - KRG's extensive development expertise in a variety of property types provides additional potential value creation for both active and future development projects.
    - Appropriately sized and measured development pipeline will offer potential additional value creation opportunities.
- **Strengthens Balance Sheet**
    - Combined balance sheet poised to capture future growth opportunities.
    - Net debt plus preferred to EBITDA ratio anticipated to be 6.0x inclusive of expected G&A synergies.
    - No material debt maturities until 2023, with an appropriate maturity ladder going forward.
- **Creates a Top 5 Shopping Center REIT**
    - Combined company will have an estimated $7.5 billion total enterprise value upon the closing of the transaction assuming a KRG share price of $20.83, which was the closing price on July 16, 2021.
    - Combination of operating best practices expected to drive Net Operating Income improvements.
    - Deepens tenant relationships and increased optionality to a broader mix of open-air retail formats.

### Leadership and Organization

The combined company will continue to be operated at the high standards previously established at both KRG and RPAI. The number of trustees on KRG's board will be expanded to thirteen with four members of the existing Board of Directors of RPAI to be appointed to KRG's board. John Kite will continue to serve as Chairman of the Board of Trustees of the combined company. William Bindley will continue to serve as Lead Independent Trustee.

The KRG management team will lead the combined company, with John Kite as Chief Executive Officer, Thomas McGowan as President and Chief Operating Officer and Heath Fear as Chief Financial Officer. The approach to integration will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders.

Upon completion of the merger, the company's headquarters will remain in Indianapolis, Indiana. The company will retain the Kite Realty Group name and trademarks and will continue to trade under the NYSE symbol KRG.

**Dividend Policy**

KRG intends to maintain its current dividend policy post-closing. Given the current dividend levels and conversion ratio, RPAI shareholders will experience a dividend increase of approximately 50% from current levels (based on current annualized distribution amount).

The timing of the pre-closing dividends of KRG and RPAI will be coordinated such that, if one set of shareholders receives their dividend for a particular quarter prior to the closing of the merger, the other set of shareholders will also receive their dividend for such quarter prior to the closing of the merger.

**Advisors**
BofA Securities is acting as lead financial advisor to KRG, with KeyBanc Capital Markets also acting as financial advisor to KRG. Hogan Lovells US LLP is acting as legal advisor to KRG. Citigroup Global Markets Inc. is acting as exclusive financial advisor and Goodwin Procter LLP is acting as legal advisor to RPAI.

\* \* \*

22.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that RPAI's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     __The Materially Incomplete and Misleading Registration Statement__

23.     On August 23, 2021, RPAI and Kite Realty jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Kite Realty Projections") and provided them to the Board and the Financial Advisors by management of both RPAI and Kite Realty with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

9

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Kite Realty Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2026: FFO per share; EBITDA; and Unlevered Free Cash Flows as calculated by Kite Realty's management, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2026: Cash NOI, FFO per share; EBITDA; and Unlevered Free Cash Flows as calculated by the Company management, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to their most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30.     With respect to Citi's *Discounted Cash Flow Analysis* for RPAI, the Registration Statement fails to disclose: (i) the terminal values of RPAI as of December 31, 2026; (ii) line items used to calculate the Company's projected unlevered free cash flows from April 1, 2021 through December 31, 2026; (iii) the inputs and assumptions underlying the use of a selected range of terminal capitalization rates of 6.15% to 7.15%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.42% to 8.40%; (v) RPAI's weighted average cost of capital; (vi) the net debt of the Company and non-controlling interests; (vi) the Company's projected net operating income for the fiscal year ending 2026; and (vii) the Company's terminal year NOI.

31.     With respect to Citi's *Discounted Cash Flow Analysis* for Kite Realty, the Registration Statement fails to disclose: (i) the terminal values of RPAI as of December 31, 2026; (ii) line items used to calculate Kite Realty's projected unlevered free cash flows from April 1,

2021 through December 31, 2026; (iii) the inputs and assumptions underlying the use of a selected range of terminal capitalization rates of 6.15% to 7.15%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.69% to 8.72%; (v) Kite Realty's weighted average cost of capital; (vi) the net debt of the Company and non-controlling interests; (vi) Kite Realty's projected net operating income for the fiscal year ending 2026; and (vii) Kite Realty's terminal year NOI.

32.     With respect to Citi's *Public Companies Analysis* for RPAI and Kite Realty, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for the companies observed by Citi in the analysis; (ii) how the companies were selected for the analysis and whether any benchmarking was conducted.

33.     With respect to the Wall Street research analysts' price targets analysis, the Registration Statement fails to disclose: (i) the Wall Street research analysts observed; and (ii) the corresponding price targets.

34.     With respect to Citi's *Illustrative Discounted Cash Flow Analysis* for the combined company, the Registration Statement fails to disclose: (i) the unlevered free cash flows that the combined company was expected to generate during the period from April 1, 2021 through December 31, 2026 and all line items used to calculate the unlevered free cash flows; (ii) the inputs and assumptions underlying the use of a selected range of terminal capitalization rates of 6.15% to 7.15%; and (iii) the inputs and assumptions underlying the discount rates ranging from 7.42% to 8.40%.

35.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder

meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.    Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

13

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of RPAI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of RPAI, and participation in and/or awareness of the Company's operations and/or intimate

knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of RPAI, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of RPAI, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

46.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 27, 2021                    **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
_____
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*